IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| SANDRA L. WYATT, et al. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| ) | |
| v. ) | Civil Action No. 3:06CV835-HEH |
| ) | |
| SUSSEX SURRY, LLC ) | |
| and ) | |
| SYNAGRO CENTRAL, INC., ) | |
| ) | |
| ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**
**(Granting Plaintiffs' Motion to Remand)**

This matter is before the Court on Plaintiffs' Motion to Remand, filed on January 17, 2007. Both parties have filed memoranda of law in support of their respective positions, and the Court heard oral argument on March 1, 2007.  For the reasons stated herein, the Court will grant Plaintiffs' Motion to Remand.

**I.  Background**

Plaintiffs Sandra Wyatt, Willis Wyatt Jr., Robert Wyatt, Eva Gregory, Leverette Gregory Jr., and Teresa Gregory filed suit against Defendants Sussex Surry, LLC and Synagro Central, Inc., in Surry County Circuit Court on November 22, 2006, seeking compensatory and punitive damages, as well as injunctive relief, for claims of negligence, private nuisance, and trespass.  Plaintiffs are property owners and residents of Surry

County, Virginia. Defendant Sussex Surry, LLC ("Sussex Surry"), a Virginia corporation with its principal place of business in Virginia, owns a 1,300-acre loblolly pine forest that abuts the properties of the plaintiffs. Defendant Synagro Central, Inc. ("Synagro") is a Delaware corporation principally doing business in Maryland that engages in the business of biosolids recycling in the eastern United States. Biosolids recycling involves the application through spraying or spreading of the byproduct of wastewater treatment plant processing. The biosolids (also known as "sewage sludge") in this case come from major wastewater treatment plants in the District of Columbia, Maryland, New Jersey and Virginia.

Plaintiffs allege that they suffer severe health problems as a result of Synagro's application of biosolids to Sussex Surry's land. Synagro began applying biosolids to the Sussex Surry site in August 2005, after obtaining a Virginia Department of Health permit. The sludge, including both treated human biosolids and untreated hog manure, was spread onto fields and sprayed into the trees. Sussex Surry consented to this use of its land, but claims that it does not "direct, assist, guide, influence or control" the process other than to the extent that they are aware it is occurring. (Sussex Surry Br. in Opp. 2.) Plaintiffs began contacting state agencies such as the Virginia Department of Health and the Virginia Department of Environmental Quality on August 31, 2006, to complain about the offensive odor and respiratory problems they had developed. As the sludge spreading continued, Plaintiffs followed up with letters to and meetings with state and local officials,

and the defendants themselves, regarding Plaintiffs' concern for the public health and their inability to enjoy their property.

Defendant Synagro removed the case to federal court on December 20, 2006. The defendants oppose the plaintiffs' motion for remand on the basis that federal subject matter jurisdiction exists: first, on the basis of diversity because Sussex Surry is an improper party to this suit and must be dismissed under the doctrine of fraudulent joinder; and second, because the federal Clean Water Act preempts Plaintiffs' state-law claims. Neither basis of federal jurisdiction is applicable here, as will be explained below.

## II. Analysis

### A. Sussex Surry is a Proper Defendant and Not Fraudulently Joined

Defendants claim that Sussex Surry was named as a defendant to this action in order to destroy diversity, and that the doctrine of fraudulent joinder requires that this court dismiss Sussex Surry as an improper party and retain jurisdiction over the case. The burden rests with the removing party to prove that a nondiverse party has been fraudulently joined, by showing that either "there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or that there has been outright fraud in the plaintiff's pleading of jurisdictional facts." *Mayes v. Rapoport*, 198 F.3d 457, 464 (4th Cir. 1999) (citation omitted). For purposes of this analysis, all issues of law and fact must be resolved in the plaintiff's favor. *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999).

Defendants do not suggest that Plaintiffs' pleadings contain outright fraud. Instead, they claim that Sussex Surry cannot "reasonably" be held liable for Synagro's allegedly tortious conduct because it is a mere "passive landowner."[1] The Court disagrees. Sussex Surry affirmatively granted permission to Synagro to spread biosolids on the forested property in order to receive the benefit of fertilization for the pine trees. Sussex Surry remained in control of the property at all times. Further, Sussex Surry continued to allow Synagro to apply biosolids to its land, even after it was made aware of the alleged injuries the practice was causing adjacent landowners. Because Sussex Surry was still in control of the land, it could have ejected Synagro from the property when informed of the detrimental effect on neighboring property owners; it did not. Sussex Surry cannot be written out of this lawsuit as a "passive landowner" when they are nothing of the sort. As a result, any analogy to independent contractor and vicarious liability law, as urged by Defendants, is inapposite.

The Commonwealth of Virginia's laws regulating biosolids application reflect the expectation of agreements similar to the one between Synagro and Sussex Surry, but also clearly regulate the landowner as much as the sewage provider by making the landowner

---

[1] Defendant Sussex Surry claims that the appropriate standard for fraudulent joinder is whether the nondiverse party can "reasonably" be held liable for the alleged conduct. Various phrases have been used to describe the standard, including "no colorable ground" for a claim to exist, *AIDS Counseling & Testing Centers v. Group W. Television*, 903 F.2d 1000, 1003 (4th Cir. 1990), the *Mayes v. Rapoport* "no possibility" standard, 198 F.3d 457, 464 (4th Cir. 1999), and Defendants' "reasonable" standard, *Linnin v. Michielsens*, 372 F. Supp. 2d 811, 818 (E.D. Va. 2005). Regardless of whether the "no possibility" test is literally applied, the Court's conclusions would remain the same.

responsible for the operations taking place on his land, regardless of whether a monetary consideration is exchanged between the parties. *See* Va. Code Ann. § 32.1-164.5(A) ("No person shall contract or propose to contract, with the owner of a sewage treatment works, to land apply . . . sewage sludge in the Commonwealth . . . without [a permit]."); Va. Code Ann. § 62.1-44.19:3(B) (same); *see also* 12 Va. Admin. Code § 5-585-130 ("[N]o owner shall cause or allow any . . . land application sites employed for biosolids use to be operated except in compliance with a written operation permit . . ."). Thus, Virginia's biosolids regulatory scheme, which includes specific provisions aimed at landowners, does not insulate Sussex Surry from potential liability regardless of its claimed passivity. For example, if it were to be shown at trial that the biosolids spreading operation at issue here were *not* in compliance with the laws and regulations of Virginia's permit program, or alternatively the operation was being negligently conducted, both Sussex Surry and Synagro could be responsible under the regulatory scheme.

Even if the actions taken by the defendants here are "lawful" under both state and federal regulations, it would not legally foreclose Sussex Surry from conceivable liability. *See Nat'l Energy Corp. v. O'Quinn*, 223 Va. 83, 85, 286 S.E.2d 181, 182 (1982) ("When a business enterprise, even though lawful, becomes obnoxious to occupants of neighboring dwellings and renders enjoyment of the structures uncomfortable by virtue of . . . offensive odors, . . . the operation of such business is a nuisance. *Barnes v. Quarries, Inc.,* 204 Va. 414, 417, 132 S.E.2d 395, 397 (1963)." The Supreme Court of Virginia has held that the

5

term "nuisance" includes "everything that endangers life or health, or obstructs the reasonable and comfortable use of property," *Barnes,* 204 Va. at 417, 132 S.E.2d at 397, and broadly construes an occupant's right to the "use and enjoyment of land," *Foley v. Harris*, 223 Va. 20, 28, 286 S.E.2d 186, 190 (1982). Accordingly, the facts as pleaded do not indicate that under no provable theory could Sussex Surry avoid possible liability to Plaintiffs. *Cf. Bowers v. Westvaco Corp.*, 244 Va. 139, 146, 419 S.E.2d 661, 666 (1992) (holding that a truck-staging operation constituted a private nuisance to adjacent landowners by negatively impacting the landowners' right to use and enjoy their property).

Alternatively, Defendants assert that the Right to Farm Act, Va. Code § 3.1-22.29, precludes Plaintiffs' nuisance suit against Defendant Sussex Surry. However, the Act does not apply "whenever a nuisance results from the negligent or improper operation of any . . . agricultural operation or its appurtenances," as the plaintiffs allege here. Va. Code Ann. § 3.1-22.29(A). This section specifically requires that the agricultural activity be conducted "in accordance with existing best management practices" and in compliance with Virginia law and regulations. *Id.* It cannot be conclusively ascertained by the pleadings alone that the biosolids spreading operation at issue here was in fact compliant with all rules, regulations, and best management practices for such operations. Finally, since the Right to Farm Act limits only nuisance claims, it would not affect the negligence or trespass causes of action alleged by the Plaintiffs.

Whether Sussex Surry has been negligent, permitted a nuisance to exist on its property, or trespassed onto Plaintiffs' land is a question for a jury, not this Court. The standard for evaluating whether a party has been fraudulently joined requires that all issues of fact and law be resolved in the plaintiff's favor. Here, the defendants have failed to demonstrate that Plaintiffs cannot establish any claim against the nondiverse Surry Sussex. *Mayes v. Rapoport*, 198 F.3d 457, 464 (4th Cir. 1999). Since this Court finds Sussex Surry to be a proper party, it lacks diversity jurisdiction to decide this case.

### B. Federal Law Does Not Completely Preempt Plaintiffs' Claims, Nor is There a Substantial Federal Question

Plaintiffs have alleged only state-law claims. To provide an independent basis for federal jurisdiction, their state-law claims must be completely preempted by federal law[2] or invoke a "substantial federal question."[3] The well-pleaded complaint rule limits a district court's inquiry to the face of the complaint, recognizing that the plaintiff is the "master of

---

[2] "[A] state claim may be removed to federal court in only two circumstances—when Congress expressly so provides . . . or when a federal statute wholly displaces the state-law cause of action through complete pre-emption. When the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8 (2003). Complete preemption has only been found by the Supreme Court in two categories of cases: causes of action under the Labor Management Relations Act and the Employee Retirement Income Security Act. *Id.*

[3] The substantial federal question doctrine allows removal where the defendant seeking to remove a case in which state law creates the plaintiff's cause of action is able to establish that the plaintiff's right to relief necessarily depends on a question of federal law, and that the question of federal law is substantial. *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 816 (4th Cir. 2004). A claim does not necessarily depend on a federal question where the plaintiff "can support his claim with even one theory that does not call for an interpretation of federal law . . . ." *Id.* at 817.

the complaint." *Harless v. CSX Hotels, Inc.*, 389 F.3d 444, 450 (4th Cir. 2004). An anticipated federal defense is not sufficient to overcome the policy favoring a plaintiff's prerogative to bring their claims in state court, and will not support removal of state-law claims. "[A] defendant cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 398–99 (1987).

### 1. Substantial Federal Question Doctrine

Defendants argue that removal jurisdiction exists because any resolution of Plaintiffs' claims would necessarily implicate the question of whether Synagro was in compliance with 40 C.F.R. Part 503, which regulates the use and disposal of sewage sludge, and further that Plaintiffs' claims threaten to "upend federally prescribed practices." (Synagro Br. in Opp. 25.) However, Synagro's alleged compliance with state or federal regulations constitutes an affirmative defense, not a part of the plaintiffs' complaint. The elements of Plaintiffs' nuisance, trespass, and negligence claims are well-settled under Virginia common law. Proof of these claims do not necessarily involve disputed elements of federal law as an essential component. "[A] case may not be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the complaint begs the assertion of the defense, and even if the defense is the only question truly at issue in the case." *Pinney v. Nokia, Inc.*, 402 F.3d 430, 445–46 (4th Cir. 2005) (internal

quotations omitted) (quoting *Franchise Tax Bd. v Constr. Laborers Trust*, 463 U.S. 1, 14 (1983)).

Even if Defendants were able to prove compliance with all state and federal regulations, Plaintiffs could still set forth valid claims upon which relief could be granted because the federal Clean Water Act contains a "savings clause," which has been construed by the Supreme Court to permit rather than preclude state common-law claims. *See Int'l Paper Co. v. Ouellette,* 479 U.S. 481 (1987). A fair reading of the complaint in this case provides no basis for federal question jurisdiction.

### 2. Complete Preemption Doctrine

Defendants' assertion that federal question jurisdiction exists in this matter on the basis of federal preemption fails to appreciate the distinction between the doctrine of complete preemption and the affirmative defense of federal preemption. In order to remove an action on the basis of complete preemption, "a defendant must establish that the plaintiff has a 'discernable federal [claim]' and that 'Congress intended [the federal claim] to be the exclusive remedy for the alleged wrong.'" *Pinney v. Nokia, Inc.*, 402 F.3d 430, 449 (4th Cir. 2004) (alteration in original) (quoting *King v. Marriott Int'l, Inc.*, 337 F.3d 421, 425 (4th Cir. 2003)).

Contrary to Defendants' contention, both the Supreme Court and the Fourth Circuit have expressly found that the Clean Water Act does *not* preempt state common-law claims. *Int'l Paper Co.*, 479 U.S. at 492–93 ("[T]he savings clause [in the CWA] negates the

9

inference that Congress 'left no room' for state causes of action."); *Stoddard v. W. Carolina Reg'l Sewer Auth.*, 784 F.2d 1200, 1207 (4th Cir. 1986) (finding that Clean Water Act did not preempt state common-law claims).

In support of their preemption argument, Defendants indicate that they will raise a defense based on Synagro's purported compliance with the Clean Water Act and its implementing regulations. As discussed above, this defense does not create federal jurisdiction, particularly considering that Synagro possessed a permit, *issued by the Virginia Department of Health*, to conduct its biosolids land application. Title 33, United States Code, Section 1370 also precludes an assertion of complete preemption as it expressly permits states to implement standards more stringent than federal regulations. *See* 33 U.S.C. § 1370. Virginia has promulgated its own regulations governing biosolids use. *See* 12 Va. Admin. Code 5-585-10 *et seq*. If found by the trial court to be relevant to Plaintiffs' common-law claim, compliance should be measured in this case by Virginia's more stringent standards.

There is no need to interpret any federal statute or regulation to resolve Plaintiffs' tort claims. The claims presented here are neither discernibly federal nor completely preempted by the Clean Water Act. The resolution of this case turns solely on the application of state law and the Commonwealth's statutory scheme for regulating biosolids. It is a local dispute and should be decided in state court.

## IV. Conclusion

For the reasons stated above, Plaintiffs' Motion to Remand will be granted. An appropriate Order will accompany this Memorandum Opinion.

/s/<br>
Henry E. Hudson<br>
United States District Judge

ENTERED this 3rd day of April, 2007.
Richmond, VA